## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN

G.T., as Parent and Legal Guardian of
JANE DOE, a Minor,                          Case No.

     Plaintiff,

v.                                          Hon.


WALLED LAKE CONSOLIDATED
SCHOOL DISTRICT, WALLED
LAKE CONSOLIDATED SCHOOL
DISTRICT BOARD OF
EDUCATION and individuals
MICHAEL LONZE, NICHOLAS
RUSSO, MICHELLE KALHORN,
KELLY SMITH, KATHREN
O'BRIEN, and JULIANNE YOUNG
in their individual and official
capacities,

     Defendants.

_____

Elizabeth K. Abdnour (P78203)
ELIZABETH ABDNOUR LAW, PLLC
Attorney for Plaintiff
1100 W. Saginaw St., Ste. 4A-2
Lansing, MI 48915
Telephone: (517) 292-0067
Fax: (517) 709-7700
elizabeth@abdnour.com

1

## COMPLAINT AND JURY DEMAND

Plaintiff G.T., as a parent and legal guardian of JANE DOE,[1] by and through her attorney, ELIZABETH K. ABDNOUR, hereby files the following complaint against Defendants as captioned above.

## JURISDICTION AND VENUE

1.  This action is brought pursuant to Title IX of the Educational Amendments of 1972, 20 U.S.C. § 1681, *et seq*.; Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 701, *et seq*.; Title II of the Americans with Disabilities Act, 42 U.S.C. § 12101, *et seq.*; the Elliott-Larsen Civil Rights Act, M.C.L. § 37.2101, *et seq*.; and the Persons with Disabilities Civil Rights Act, M.C.L. § 37.1101, *et seq.*

2.  This is also an action to redress the deprivation of Plaintiff's constitutional rights under the Fourteenth Amendment of the United States Constitution pursuant to 42 U.S.C. § 1983.

3.  Subject matter jurisdiction is based on 28 U.S.C. § 1331, which grants district courts jurisdiction over all civil actions arising under the Constitution, laws, and treaties of the United States.  This Court also has subject matter jurisdiction pursuant to 28 U.S.C. § 1343, which gives district courts original jurisdiction over: (a) any civil action authorized by law to be brought by any person to redress the deprivation, under color of any state law, statute, ordinance, regulation, custom, or

---

[1] Jane Doe is a pseudonym.

usage, of any right, privilege, or immunity secured by the Constitution of the United States or by any Act of Congress providing for equal rights of citizens or of all persons within the jurisdiction of the United States; and (b) any civil action to recover damages or to secure equitable relief under any Act of Congress providing for the protection of civil rights.

4.  Plaintiff's claims are cognizable under the United States Constitution, 42 U.S.C. § 1681, *et seq*., and under Title IX, Section 504, and the Americans with Disabilities Act.

5.  The events giving rise to this lawsuit occurred in Oakland County, Michigan, which sits in the Eastern District of Michigan.

6.  Venue is proper in the United States District Court for the Eastern District of Michigan, pursuant to 28 U.S.C. § 1391(b)(2), in that this is the judicial district in which the events giving rise to the claims occurred.

## **PARTIES**

7.     G.T. is a resident of Oakland County, Michigan, and was at all relevant times and continues to be the parent and legal guardian of Jane Doe.

8.     Jane Doe is a resident of Oakland County, Michigan, and at all relevant times and continues to be a student in Walled Lake Consolidated School District.

9.     Defendant Walled Lake Consolidated School District (WLCSD) was at all relevant times and continues to be a public educational institution in Walled Lake, Michigan, organized and existing under the laws of the State of Michigan.

10.     Defendant WLCSD Board of Education is the governing body for WLCSD.

11.     Defendant WLCSD and Defendant WLCSD Board of Education are hereinafter collectively referred to as the WLCSD Defendants.

12.     At all material times, Defendant Michael Lonze, in his official capacity, worked within Oakland County, State of Michigan, and was an agent and/or employee of WLCSD, acting or failing to act within the scope, course, and authority of his employment and his employer and served as the Interim Superintendent of WLCSD.

13.     At all material times, Defendant Nicholas Russo, in his official capacity, worked within Oakland County, State of Michigan, and was an agent and/or employee of WLCSD, acting or failing to act within the scope, course, and authority of his employment and his employer and served as the Assistant Superintendent of Human Resources and District Title IX Coordinator for WLCSD.

14.     At all material times, Defendant Michelle Kalhorn, in her official capacity, worked within Oakland County, State of Michigan, and was an agent and/or employee of WLCSD, acting or failing to act within the scope, course, and

authority of her employment and her employer and served as the Principal of Sarah Banks Middle School.

15.     At all material times, Defendant Kelly Smith, in her official capacity, worked within Oakland County, State of Michigan, and was an agent and/or employee of WLCSD, acting or failing to act within the scope, course, and authority of her employment and her employer and served as the Assistant Principal of Sarah Banks Middle School.

16.     At all material times, Defendant Kathren O'Brien, in her official capacity, worked within Oakland County, State of Michigan, and was an agent and/or employee of WLCSD, acting or failing to act within the scope, course, and authority of her employment and her employer and served as a teacher at Sarah Banks Middle School.

17.     At all material times, Defendant Julianne Young, in her official capacity, worked within Oakland County, State of Michigan, and was an agent and/or employee of WLCSD, acting or failing to act within the scope, course, and authority of her employment and her employer and served as a social worker at Sarah Banks Middle School.

## APPLICABLE LAW AND POLICIES

18.     Title IX of the Education Amendments of 1972 ("Title IX"), 20 U.S.C. § 1681(a), states that:

> No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefit of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance…

19.     Title IX is implemented through the Code of Federal Regulations.  *See* 34 C.F.R. Part 106 and 38 C.F.R. Part 23.

20.     34 C.F.R. § 106.8 (b) provides:

> …A recipient shall adopt and publish grievance procedures providing for prompt       and equitable resolution of student and employee complaints alleging any action which would be prohibited by this part.

21.     In *Gebser v. Lago Vista Independent School District*, 524 U.S. 274 (1988), the United States Supreme Court recognized that a recipient of federal educational funds intentionally violates Title IX, and is subject to a private damages action, where the recipient is "deliberately indifferent" to known acts of teacher-student discrimination.

22.     In *Davis v. Monroe County Board of Education*, 526 U.S. 629 (1999), the Supreme Court extended the private damages action recognized in *Gebser* to cases where the harasser is a student, rather than a teacher.

23.     *Davis* held that a complainant may prevail in a private Title IX damages action against a school district in cases of student-on-student harassment where the funding recipient is:

> a) deliberately indifferent to sexual harassment of which the recipient has actual knowledge, and

> b) the harassment is so severe, pervasive, and objectively offensive that it can be said to deprive the victims of access to the educational opportunities or benefits provided by the school.

*Davis*, 526 U.S. at 1669-76.

24.    In assessing deliberate indifference, 34 C.F.R. § 106.30(a) differentiates between the responsibilities of employees in elementary and secondary schools. In higher education institutions, actual knowledge of a hostile environment can only be imputed to a "Title IX Coordinator or any official of the recipient who has authority to institute corrective measures on behalf of the recipient" who has received notice of allegations of sex discrimination. However, in elementary and secondary schools, actual knowledge can be imputed to "any employee of an elementary and secondary school" provided with notice of allegations of sex discrimination.

25.    In *Kollaritsch v. Michigan State University Board of Trustees*, 944 F.3d 613 (6th Cir. 2019), the Court of Appeals for the Sixth Circuit held that, in order to be liable for deliberate indifference under Title IX, a school's response must have failed to protect a plaintiff against actual further harassment: "…a student-victim plaintiff must plead, and ultimately prove, that the school had actual knowledge of actionable sexual harassment and that the school's deliberate indifference to it resulted in further actionable sexual harassment against the student-victim, which caused the Title IX injuries." *Id.* at 618.

26.    In *Jackson v. Birmingham Board of Education*, 544 U.S. 167 (2005), the Supreme Court held that retaliation against a person who complains about sex discrimination is itself a form of discrimination "on the basis of sex" forbidden by Title IX.

27.    In *Doe v. Metro. Gov't of Nashville & Davidson Cnty., Tenn.*, No. 20-6225, 2022 Westlaw 157 3848 (6th Cir. May 19, 2022), the Court of Appeals for the Sixth Circuit adopted the Ninth Circuit test for Title IX pre-assault claims, which provides: "A student must show: 1) the school maintained a policy of deliberate indifference to reports of sexual misconduct, 2) which created a heightened risk of sexual harassment that was known or obvious, 3) in a context subject to the school's control and 4) as a result the plaintiff suffered harassment that was 'so severe, pervasive and objectively offensive that it can be said to have deprived the plaintiff of access to the educational opportunities or benefits provided by the school.'" Citing *Karasek v. Regents of the University of California*, 956 F.3d 1093 (9th Cir. 2020). In essence, a school's deliberate indifference to known past acts of sexual misconduct must have caused the misconduct that the student currently alleges to proceed with a pre-assault claim. The court further held that, when alleging post-assault claims, K-12 students need not prove that further harassment must be inflicted against the same victim.  Instead, the *Doe* court held that the "same victim" requirement from *Kollaritsch*–which involved a university–did not apply in the K-

12 context because K-12 schools have more authority and control over students than at the university level.

28.     The Fifth Amendment to the U.S. Constitution provides that "No person shall be…deprived of life, liberty, or property, without due process of law…." U.S. Const. amend. V.

29.     The Fourteenth Amendment to the U.S. Constitution provides that no State shall "deny to any person within its jurisdiction the equal protection of the laws."  U.S. Const. amend. XIV, § 1.

30.     In *Goss v. Lopez*, 419 U.S. 565 (1975), the Supreme Court held that students facing temporary suspension from a public school have property and liberty interests that qualify for protection under the Due Process Clause of the Fourteenth Amendment.  *Id*. at 572-6.  The Court further held that a student's legitimate entitlement to a public education is a property interest that is protected by the Due Process Clause, and that may not be taken away for misconduct without observing minimum procedures required by that Clause. *Id*. at 574-5. Finally, the Court held that a 10-day suspension from school is not de minimis and may not be imposed in complete disregard of the Due Process. *Id*. at 566.

31.     Section 504 of the Rehabilitation Act of 1973 (Section 504), 29 U.S.C. § 701, *et seq*., provides that:

>      No otherwise qualified individual with a disability in the United
>      States, as defined in Section 705(20) of this title, shall, solely by

> reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance...

29 U.S.C. § 794(a).

32.    The Americans with Disabilities Act (ADA), 42 U.S.C. § 12101, *et seq.*, provides that:

> …no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity.

42 U.S.C. § 12132.

33.    Under the ADA, the term "public entity" includes any department, agency, special purpose district, or other instrumentality of a State or States or local government.  42 U.S.C. § 12131(1)(B).

34.    The Elliott Larsen Civil Rights Act (ELCRA), M.C.L. § 37.2101, *et seq.*, states that:

> The opportunity to obtain employment, housing and other real estate, and the full and equal utilization of public accommodations, public service, and educational facilities without discrimination because of religion, race, color, national origin, age, sex, height, weight, familial status, or marital status as prohibited by this act, is recognized and declared to be a civil right.

M.C.L. § 37.2102(1).

35.    Under ELCRA, the term "educational institution" means:

…a public or private institution, or a separate school or department thereof, and includes an academy, college, elementary or secondary school, extension course, kindergarten, nursery, local school system, university, or a business, nursing, professional, secretarial, technical, or vocational school; and includes an agent of an educational institution.

M.C.L. § 37.2401.

36.     Under ELCRA, an educational institution shall not "[d]iscriminate against an individual in the full utilization of or benefit from the institution, or the services, activities, or programs provided by the institution because of . . . sex." M.C.L. § 37.2402(a).

37.     The Persons with Disabilities Civil Rights Act (PDCRA), M.C.L. § 37.1101, *et seq*., states that:

The opportunity to obtain employment, housing, and other real estate and full and equal utilization of public accommodations, public services, and educational facilities without discrimination because of a disability is guaranteed by this act and is a civil right.

M.C.L. § 37.1102(1).

38.     Under PDCRA, the term "educational institution" means:

…a public or private institution or a separate school or department of a public or private institution, includes an academy, college, elementary or secondary school, extension course, kindergarten, nursery, school system, school district, or university, and a business, nursing, professional, secretarial, technical, or vocational school, and includes an agent of an educational institution.

M.C.L. § 37.2401.

39.   Under PDCRA, an educational institution shall not:

Discriminate in any manner in the full utilization of or benefit from the institution, or the services provided and rendered by the institution to an individual because of a disability that is unrelated to the individual's ability to utilize and benefit from the institution or its services, or because of the use by an individual of adaptive devices or aids.

M.C.L. § 37.2402(a).

40.   WLCSD receives federal funding and is therefore subject to Title IX and Section 504.

## FACTUAL ALLEGATIONS

41.   Jane Doe is a fourteen-year-old child.

42.   During the 2021-2022 school year, Jane Doe was an eighth-grade student at Sarah Banks Middle School, a school educating students in grades six through eight in WLCSD.

43.   On October 3, 2022, Jane Doe began her freshman year at Walled Lake Western High School.

44.   Jane Doe has been diagnosed with autism, depression, anxiety, attention deficit hyperactivity disorder (ADHD), and post-traumatic stress disorder (PTSD).

45.   As a result of her disabilities, Jane Doe has an Individualized Educational Plan (IEP) to receive accommodations in school.

46.     Part of Jane Doe's IEP allows her to have hall passes in which she can be excused from class to go to a "quiet room" when she needs a break.

47.     Prior to March 4, 2022, the procedure for Jane Doe to go to the quiet room was as follows: Jane Doe would tell her teacher she needed a break, her teacher would call the office, then Jane Doe would walk to the quiet room to sit and regulate herself.

48.     On Friday, March 4, 2022, G.T. received a phone call from Sarah Banks staff, informing her that Jane Doe had injured herself.

49.     On that day, when Jane Doe went to the quiet room, she became agitated and harmed herself.

50.     Jane Doe received treatment at a hospital and returned to school the following Monday, March 7, 2022.

51.     G.T. arranged for Jane Doe to be placed in an inpatient partial hospitalization program at a mental health facility. She began the program on March 8, 2022.

52.     On Monday, March 14, 2022, Jane Doe entered the inpatient program.

53.     Jane Doe remained in the program until April 19, 2022.

54.     On April 20, 2022, Jane Doe returned to school at Sarah Banks Middle School.

55.     After returning to school, a new procedure was implemented for Jane Doe to go to the quiet room: Jane Doe would inform her teacher she needed a break, her teacher would call the office, a staff member would meet Jane Doe to walk her down and check in with her, and then Jane Doe could sit in the quiet room and regulate.

*Indecent Exposure and Subsequent Sexual Harassment by Another Student at Sarah Banks Middle School*

56.     On April 22, 2022, Jane Doe began talking socially to a male classmate, John Roe,[2] with whom Jane Doe shared classes the entire year.

57.     The following day, Jane Doe and John Roe went to the mall while accompanied by both G.T. and John Roe's mother.

58.     On Tuesday, April 26, 2022, Jane Doe disclosed to G.T. that while on a video call with John Roe, he told her that he wanted to do graphic, violent, sexually explicit things to her during the upcoming weekend, including tying her up and making her scream.

59.     During the video call, John Roe also told Jane Doe that he masturbates to her daily, and he proceeded to masturbate to her while on the video call with Jane Doe, exposing his genitals to her.

---

[2] John Roe is a pseudonym.

60.    This conduct was extremely unwelcome to Jane Doe.  She felt overwhelmed and had a panic attack.

61.    G.T. was able to calm Jane Doe down and helped Jane Doe send a text message to John roe, telling him that she did not consent to seeing his genitals and that Jane Doe did not wish to see John Roe socially anymore.

62.    Jane Doe blocked John Roe's number from her phone.

*Deliberate Indifference by WLCSD Officials*

63.    G.T. notified Jane Doe's teacher, Defendant O'Brien, about John Roe's indecent exposure on April 26, 2022.

64.    G.T. asked Defendant O'Brien if she could speak to John Roe.

65.    Defendant O'Brien replied that she was uncomfortable with G.T. speaking to John Roe and directed G.T. to contact John Roe's mother.

66.    Upon information and belief, Defendant O'Brien took no further action to protect Jane Doe from John Roe.

67.    Upon information and belief, Defendant O'Brien did not report John Roe's conduct to the Title IX Coordinator.

68.    Upon information and belief, Defendant O'Brien did not make a report of John Roe's indecent exposure to Children's Protective Services.

69.    G.T. kept Jane Doe home from school the following day, Wednesday, April 27, 2022.

70.    G.T. texted John Roe's mother, informing her about John Roe's indecent exposure toward Jane Doe.

71.    G.T. informed John Roe's mother about Jane Doe's past sexual trauma[3] and told her that Jane Doe did not feel safe around John Roe because of his actions toward her.

72.    John Roe's mother apologized and agreed that John Roe should leave Jane Doe alone.

73.    On Friday, April 29, 2022, Jane Doe was upset and went to the social worker's office at school.

74.    Jane Doe told the social worker, Defendant Young, that John Roe was staring at her and would not leave her alone in class.  Jane Doe told Defendant Young that John Roe continuously harassed and made comments to her, including sitting next to her, touching her, and repeatedly trying to apologize to her for exposing himself to her.

75.    Jane Doe was extremely upset as this conduct was unwelcome to her and she did not feel safe in school as a result.

76.    Jane Doe informed Defendant Young about John Roe's indecent exposure and subsequent harassment toward her.

---

[3] On a prior occasion, Jane Doe had been sexually assaulted by a different peer during summer camp.

77.     Defendant Young helped Jane Doe regulate her emotions and called G.T. to notify her of what happened.

78.     G.T. confirmed Jane Doe's account of John Roe's harassment and stalking to Defendant Young.

79.     G.T. picked up Jane Doe early from school that day because she was so upset.

80.     Upon information and belief, Defendant Young took no further action to protect Jane Doe from John Roe.

81.     Upon information and belief, Defendant Young did not report John Roe's conduct to the Title IX Coordinator.

82.     Upon information and belief, Defendant Young did not make a report of John Roe's indecent exposure to Children's Protective Services.

83.     Defendant Kalhorn and Defendant Smith were notified of John Roe's indecent exposure and subsequent sexual harassment and stalking of Jane Doe from the beginning of the issue.

84.     Upon information and belief, neither took any disciplinary action against John Roe.

85.     Upon information and belief, neither Defendant Kalhorn nor Defendant Smith took any action to protect Jane Doe from John Roe.

86.     Upon information and belief, neither Defendant Kalhorn nor Defendant Smith reported John Roe's conduct to the Title IX Coordinator.

87.     Upon information and belief, neither Defendant Kalhorn nor Defendant Smith made a report of John Roe's indecent exposure to Children's Protective Services.

*Events of May 5, 2022*

88.     On Thursday, May 5, 2022, G.T. received a call from the school, informing her that Jane Doe had a knife.

89.     G.T. was confused as she did not believe Jane Doe had access to a knife or would have brought a knife to school.

90.     G.T. rushed to Jane Doe's school to find out what was going on. When G.T. arrived at the school, she found Jane Doe in Defendant Young's office with a police officer.

91.     Upon information and belief, there were several police officers dispatched to the school in response to the incident.

92.     G.T. was informed that Jane Doe left her science class early to go to the quiet room. This was the first time the new procedure for Jane Doe to go to the quiet room was followed, which had been implemented about two weeks prior.

18

93.     While Jane Doe walked down to the quiet room, John Roe walked to the office as well. G.T. does not know whether John Roe intentionally followed Jane Doe or if he was called down to the eighth-grade counselor's office at the same time.

94.     Initially, John Roe walked past the quiet room. John Roe then abruptly stepped into the doorway of the quiet room to confront Jane Doe, holding her captive via the only entry point to the room.

95.     The quiet room is not a large room. It is about the size of a closet, so Jane Doe could not immediately leave the room with John Roe standing in the doorway.

96.     Jane Doe was startled by John Roe and became scared due to his repeated sexual harassment and stalking of her.  This triggered Jane Doe's PTSD and her fight, flight, or freeze response.

97.     Jane Doe managed to squeeze past John Roe escape from the quiet room and into the hallway.

98.     Jane Doe reached into an unlocked drawer in a butler's pantry located in the hallway to try to find something to protect herself from John Roe.  She pulled a knife out of the drawer and began yelling and pointing at John Roe.

99.     Upon information and belief, a staff member heard the commotion and called 911.

100.   Police officers from the City of Wixom Police Department (WPD) responded and were able to calm Jane Doe down and convince her to drop the knife.

101.   WPD officers urged G.T. to file an indecent exposure police report against John Roe.

102.   Officers stated that they believed Jane Doe's explanation of the events, but she should file a report with proof to explain why she needed to defend herself.

103.   G.T. took Jane Doe home and gave her emergency medications which helped to calm her.

104.   Jane Doe became manic during the weekend and was hospitalized on May 7, 2022.

105.   Upon information and belief, John Roe returned to school on Monday, May 9, 2022, and received no discipline for exposing himself inappropriately to Jane Doe or for repeatedly harassing and stalking her at school.

106.   On May 11, 2022, upon the advice of WPD, G.T. filed a police report against John Roe.

107.   The Michigan Self-Defense Act, M.C.L § 780.972(2), states, in relevant part, that:

> An individual who has not or is not engaged in the commission of a crime at the time he or she uses force other than deadly force may use force other than deadly force against another individual anywhere he or she has the legal right to be with no duty to retreat if he or she honestly and reasonably believes that the use of that force is necessary to defend himself or herself or another

individual from the imminent unlawful use of force by another individual.

108.   Jane Doe had a legal right to be in Sarah Banks Middle School and in the quiet room.

109.   Jane Doe was trapped in the quiet room by John Roe when he confronted her.

110.   Based on John Roe's previous harassment and stalking of Jane Doe, having made her feel unsafe in her classroom and in his presence generally, and due to WLCSD staff's repeated failure to protect her from John Roe, Jane Doe honestly and reasonably believed she needed to use the threat of force to defend herself from John Roe's imminent unlawful use of force against her.

111.   Jane Doe did not bring the knife to school with her.

112.   Jane Doe did not plan to threaten John Roe on school grounds.

113.   WLCSD knowingly allowed a knife to be kept in an unlocked butler's pantry in a public hallway that students could easily access.

*WLCSD's Violations of Jane Doe's Right to Due Process*

114.   On Tuesday, May 10, 2022, G.T. went to school to attend a meeting for an end of the school year review of Jane Doe's IEP.

115.   At that meeting, G.T. was shocked to learn for the first time that WLCSD planned to expel Jane Doe for defending herself against John Roe on May 5, 2022.

116.    During the May 10, 2022, meeting, WLCSD staff confirmed to G.T. that they understood that Jane Doe's behavior in defending herself was a result of her trauma response due to her PTSD diagnosis.

117.    WLCSD set an expulsion hearing for May 18, 2022 and told G.T. that Jane Doe was required to attend the hearing.

118.    On May 17, 2022, Jane Doe returned home from being hospitalized due to her manic episode.

119.    Hospital staff told G.T. that John Roe's indecent exposure and repeated harassment and stalking of Jane Doe triggered her PTSD.

120.    Hospital staff also told G.T. that the PTSD, combined with an unanticipated allergic reaction to one of her medications, caused Jane Doe to become manic.

121.    Because Jane Doe had just returned home from hospitalization, G.T. requested that the expulsion hearing be postponed.  The expulsion hearing was then rescheduled to June 2, 2022.

122.    G.T. contacted the Student Advocacy Center of Michigan (SAC) to inquire about Jane Doe's rights during the expulsion process.

123.    On May 27, 2022, an advocate from SAC, Larry Cantlin, contacted WLCSD on G.T.'s behalf to challenge the legitimacy of the expulsion hearing.

124.   Mr. Cantlin is not an attorney and was not acting as G.T.'s legal representative.  He was only communicating on her behalf as an advocate.

125.   On May 31, 2022, WLCSD's attorney sent a letter to Mr. Cantlin only—not G.T.—stating that the expulsion hearing was canceled and that WLCSD was unilaterally removing Jane Doe from school for 45 days with no hearing.  *See* Exhibit 1.

126.   To date, neither G.T. nor Jane Doe ever received written notice of Jane Doe's removal from school.

127.   WLCSD never held a hearing or any meeting to provide Jane Doe with an opportunity to exercise her right to due process under the law before being denied her education.

128.   WLCSD never provided Jane Doe with due process as it did not hold a suspension hearing in violation of the Michigan Revised School Code, as outlined in the *MDE Recommends* guidance issued by the Michigan Department of Education:

> **DUE PROCESS**
> Fairness dictates that students be given notice of the types of conduct which are prohibited and the potential consequences of the misconduct. A school's rules and procedures for suspending or expelling a student should be outlined in the handbook adopted by the local board of education.
>
> *Suspension–10 Days or Less*
> For a suspension of 10 days or less, a student is entitled to minimal due process protections, including oral or written notice

of the accusation(s), what disciplinary measures are being proposed, and an opportunity to respond. If feasible, the notice and hearing should precede the student's removal from school. If the student's presence poses a danger to persons or property or threatens to disrupt the academic process, prior notice and hearing may not be feasible. In this case, a hearing should follow the student's removal from school as soon as possible.

*Suspension – More Than 10 Days and Expulsions*
A more formal due process procedure is required when serious disciplinary measures are alleged against a student. The student shall be given reasonable time to prepare for the hearing. The person conducting the disciplinary hearing must be impartial. The board of education, a school administrator or disciplinary panel may conduct the hearing as long as they are truly impartial.[4]

129. The question of whether a student is entitled to due process prior to being removed from school for a significant length of time has been settled law since *Goss v. Lopez*, 419 U.S. 565 (1975).

130. WLCSD unilaterally removed Jane Doe from school with no educational services provided to her from May 31, 2022, until October 3, 2022.

131. WLCSD's removal of Jane Doe from school also violated the Michigan Revised School Code by failing to consider the following seven factors prior to suspending or expelling her:

(a) The pupil's age.
(b) The pupil's disciplinary history.
(c) Whether the pupil is a student with a disability.

---

[4] *MDE Recommends*, Michigan Department of Education, https://www.michigan.gov/-/media/Project/Websites/mde/Year/2006/10/31/MDEP2_suspensions800.pdf?rev=aa247453dae04edc8f66e9b9fdcae114, (last visited Oct. 4, 2022).

(d) The seriousness of the violation or behavior committed by the pupil.
(e) Whether the violation or behavior committed by the pupil threatened the safety of any pupil or staff member.
(f) Whether restorative practices will be used to address the violation or behavior committed by the pupil.
(g) Whether a lesser intervention would properly address the violation or behavior committed by the pupil.

M.C.L. 1310d(1).

132.   Pursuant to WLCSD Board Policy 2006 – Behavior: "The Board of Education delegates to the Superintendent the authority to issue long-term suspensions and expulsions, pursuant to legally compliant procedures set forth in the Student Code of Conduct.  The Superintendent's decision on such suspensions and expulsions will be final."[5]

133.   Defendant Lonze is the Superintendent of WLCSD.

134.   Therefore, Defendant Lonze is ultimately responsible for Jane Doe's unlawful 45-day removal from school without due process pursuant to WLCSD board policies.

135.   Jane Doe was denied the opportunity to attend her eighth-grade dance and graduation.

136.   Jane Doe was denied the opportunity to start high school with her peers.

---

[5] *See Walled Lake Consolidated School District Board Policy 2006 – Behavior*, Miller Johnson School Policy Services,
https://z2policy.ctspublish.com/luskalbertson/browse/walledlakeset/walledlake/z20000016 (last visited Oct. 3, 2022).

137.    Jane Doe received no educational services from May 6, 2022, to October 3, 2022.

138.    As early as Friday, August 26, 2022, in an email chain among WLCSD officials, it was mentioned that Jane Doe had been unenrolled from WLCSD altogether.

139.    G.T. was unaware of Jane Doe's status as an unenrolled student until she was notified on September 12, 2022.

140.    G.T., as parent and legal guardian of Jane Doe, had not unenrolled Jane Doe from WLCSD and was, in fact, trying to determine how to get educational services in place for Jane Doe during her expulsion period.

141.    During the first few days of the 2022-2023 school year, G.T. received phone calls from Walled Lake Central High School informing her that Jane Doe had been marked absent each day from school.

142.    G.T. never received any explanation from WLCSD as to how Jane Doe could be expelled, and disenrolled, and repeatedly absent from school.

*WLCSD's Continued Exposure to Risk of Harm to Jane Doe*

143.    When Jane Doe was allowed to return to WLCSD on October 3, 2022, WLCSD required her to spend the first 30 days of school in the Early Intervention program at Walled Lake Western High School—the same high school as John Roe.

144.   There are three high schools in WLCSD: Walled Lake Western, Walled Lake Central, and Walled Lake Northern.

145.   Jane Doe had previously been accepted to Walled Lake Central.

146.   Despite requests from G.T., WLCSD refused to transfer John Roe to a different school district and refused to allow Jane Doe to attend either Walled Lake Central or Walled Lake Northern.

147.   Upon information and belief, WLCSD has not put any restrictions on John Roe to ensure that he cannot access Jane Doe.

148.   Jane Doe is now, once again, forced to attend the same school as her abuser and risk continued stalking and sexual harassment.

*WLCSD's Violations of Jane Doe's Rights Under 34 U.S.C. Part 106*

149.   34 U.S.C. § 106.8(a) requires:

> Each recipient must designate and authorize at least one employee to coordinate its efforts to comply with its responsibilities under this part, which employee must be referred to as the "Title IX Coordinator." The recipient must notify applicants for admission and employment, students, parents or legal guardians of elementary and secondary school students, employees, and all unions or professional organizations holding collective bargaining or professional agreements with the recipient, of the name or title, office address, electronic mail address, and telephone number of the employee or employees designated as the Title IX Coordinator pursuant to this paragraph.

150.   34 U.S.C. § 106.8(b) requires:

> (1) Notification of policy. Each recipient must notify persons entitled to a notification under paragraph (a) of this section that

the recipient does not discriminate on the basis of sex in the education program or activity that it operates, and that it is required by title IX and this part not to discriminate in such a manner. Such notification must state that the requirement not to discriminate in the education program or activity extends to admission (unless subpart C of this part does not apply) and employment, and that inquiries about the application of title IX and this part to such recipient may be referred to the recipient's Title IX Coordinator, to the Assistant Secretary, or both.

(2) Publications. (i) <u>Each recipient must prominently display the contact information required to be listed for the Title IX Coordinator under paragraph (a) of this section and the policy described in paragraph (b)(1) of this section on its website</u>, if any, and in each handbook or catalog that it makes available to persons entitled to a notification under paragraph (a) of this section…. [Emphasis added]

151.   WLCSD has no Title IX Coordinator designated on its website or in its board policies.[6]

152.   34 U.S.C. § 106.8(c) requires:

A recipient must adopt and publish grievance procedures that provide for the prompt and equitable resolution of student and employee complaints alleging any action that would be prohibited by this part and a grievance process that complies with § 106.45 for formal complaints as defined in § 106.30. A recipient must provide to persons entitled to a notification under paragraph (a) of this section notice of the recipient's grievance procedures and grievance process, including how to report or file a complaint of sex discrimination, how to report or file a formal complaint of sexual harassment, and how the recipient will respond.

---

[6] *See* Walled Lake Consolidated Schools, https://wlcsd.org/ (last visited Oct. 3, 2022), and *Walled Lake Consolidated School District,* Miller Johnson School Policy Services, https://z2policy.ctspublish.com/luskalbertson/browse/walledlakeset/walledlake/root (last visited Oct. 3, 2022).

153.   34 U.S.C. § 106.45 outlines the required components of an educational institution's Title IX grievance process.

154.   WLCSD has no Title IX grievance procedures at all anywhere on its website or in its board policies.[7]

155.   When a contract attorney assisting G.T.'s attorney with this matter contacted WLCSD by phone in September 2022 to find out the identity of its Title IX Coordinator, she had to call twice and was redirected to four different people. The second person she spoke with asked several times what she meant by "Title IX Coordinator."

156.   34 U.S.C. § 106.8 requires:

> A recipient with actual knowledge of sexual harassment in an education program or activity of the recipient against a person in the United States, must respond promptly in a manner that is not deliberately indifferent. A recipient is deliberately indifferent only if its response to sexual harassment is clearly unreasonable in light of the known circumstances. For the purposes of this section, §§ 106.30, and 106.45, "education program or activity" includes locations, events, or circumstances over which the recipient exercised substantial control over both the respondent and the context in which the sexual harassment occurs, and also includes any building owned or controlled by a student organization that is officially recognized by a postsecondary institution. A recipient's response must treat complainants and respondents equitably by offering supportive measures as defined in § 106.30 to a complainant, and by following a grievance process that complies with § 106.45 before the imposition of any disciplinary sanctions or other actions that are

---

[7] *Id.*

not supportive measures as defined in § 106.30, against a respondent. The Title IX Coordinator must promptly contact the complainant to discuss the availability of supportive measures as defined in § 106.30, consider the complainant's wishes with respect to supportive measures, inform the complainant of the availability of supportive measures with or without the filing of a formal complaint, and explain to the complainant the process for filing a formal complaint.

157. On July 22, 2022, G.T.'s attorney notified WLCSD's attorney, both verbally by phone and in writing via email, that WLCSD was in violation of its obligations to Jane Doe under 34 U.S.C. § 106.8. *See* Exhibit 2.

158. WLCSD's attorney responded to G.T.'s attorney, confirming receipt of the communication and writing that "Title IX is not [his] specialty." *Id.*

159. As of the date of filing this complaint, no WLCSD official, including Defendant Russo, the WLCSD Title IX Coordinator, has ever provided Jane Doe with any information about the availability of supportive measures or the process for filing a formal complaint against John Roe, despite G.T.'s attorney providing explicit notice to WLCSD's attorney that WLCSD had a legal obligation to do so over two months ago.

160. 34 C.F.R. § 106.44(a) requires:

A recipient with actual knowledge of sexual harassment in an education program or activity of the recipient against a person in the United States, must respond promptly in a manner that is not deliberately indifferent. A recipient is deliberately indifferent only if its response to sexual harassment is clearly unreasonable in light of the known circumstances….

The Title IX Coordinator must promptly contact the complainant to discuss the availability of supportive measures as defined in § 106.30, consider the complainant's wishes with respect to supportive measures, inform the complainant of the availability of supportive measures with or without the filing of a formal complaint, and explain to the complainant the process for filing a formal complaint.

161.   Although WLCSD had actual knowledge of the sexual harassment Jane Doe experienced in her educational program due to multiple reports made by both Jane Doe and G.T. to Defendants Kalhorn, Smith, O'Brien, and Young.

162.   Despite these repeated reports of potential violations of Title IX, at no time did Defendant Russo or any other WLCSD employee contact Jane Doe or G.T. to find out what Jane Doe's wishes were regarding supportive measures, inform her of the availability of supportive measures, or explain to her the process for filing a formal complaint.

163.   34 C.F.R. § 106.45(b)(10)(i) requires:

A recipient must maintain for a period of seven years records of—…(D) All materials used to train Title IX Coordinators, investigators, decisionmakers, and any person who facilitates an informal resolution process. <u>A recipient must make these training materials publicly available on its website</u>, or if the recipient does not maintain a website the recipient must make these materials available upon request for inspection by members of the public. [Emphasis added].

164.    WLCSD has no Title IX training materials available anywhere on its website.[8]

**COUNT I**
**Violation of Title IX**
**Deliberate Indifference to Sex Discrimination**
**20 U.S.C. § 1681, *et seq*.**
**(The WLCSD Defendants)**

165.    Plaintiff realleges and incorporates by reference the allegations contained in the previous paragraphs.

166.    This action is brought pursuant to Title IX of the Educational Amendments of 1972, 20 U.S.C. §1681, *et seq*.

167.    During April and May 2022, Jane Doe was subjected to sex discrimination consisting of sexual harassment and stalking committed by a fellow WLCSD student, both at school and outside of school.

168.    From April 2022 until the present, Defendants engaged in repeated acts of deliberate indifference to Jane Doe's multiple reports of sex discrimination perpetrated by fellow student John Roe as outlined previously in this Complaint, by failing to timely respond to her reports of sexual harassment and stalking, failing to provide her with information about supportive measures, failing to provide her with information on how to make a formal complaint of sex discrimination, failing to create and publish a Title IX grievance policy, failing to notify her of the identity of

---

[8] *Id.*

32

its Title IX Coordinator, and failing to adequately train and supervise their staff with respect to the handling of Title IX complaints.

169.    Defendants failed to take immediate, effective remedial steps to resolve Jane Doe's complaints of sex discrimination and instead acted with deliberate indifference to her claims.

170.    Defendants' lack of action and failure to appropriately respond to Jane Doe's reports caused her to experience further sexual harassment and stalking.

171.    Defendants persisted in their actions and inactions despite having actual knowledge of the discrimination to which Jane Doe was subjected.

172.    Defendants engaged in a pattern and practice of behavior designed to discourage and dissuade students who had experienced sexual harassment and sex discrimination from seeking assistance and protection.

173.    As a direct and proximate result of Defendants' wrongful acts and omissions, Jane Doe has sustained injuries and damages, including, but not limited to, economic loss, loss of earnings and earnings capacity, educational loss, mental and emotional distress, including anxiety, mental anguish, humiliation, embarrassment, damage to her good name, and loss of the ordinary pleasures of everyday life.

**COUNT II**
**Violation of Title IX**
**Hostile Environment**
**20 U.S.C. § 1681, *et seq*.**
**(The WLCSD Defendants)**

174.   Plaintiff realleges and incorporates by reference the allegations contained in the previous paragraphs.

175.   Plaintiff alleges violations of Title IX Defendant due to Defendants' cultivation and perpetuation of a sexually hostile environment against Jane Doe.

176.   Defendants operate programs in receipt of federal funds and is thus covered by Title IX's prohibition on sex-based discrimination.

177.   Via the abuse described previously in this Complaint, a WLCSD student created an abusive and sexually hostile educational environment on Sarah Banks Middle School's campus that impeded and effectively denied Jane Doe equal access to educational opportunities and benefits.

178.   The ongoing sexual harassment, stalking, and abuse that Jane Doe experienced, and the subsequent Title IX failures by Defendants, were so severe, pervasive, and objectively offensive that Jane Doe was denied equal access to WLCSD's educational opportunities and benefits.

179.   Defendants are liable for the abusive and hostile educational environment at WLCSD because Defendants had actual knowledge of Jane Doe's

abuser's acts of sex-based discrimination but allowed him to continue to have unfettered access to Jane Doe.

180.   Defendants are also liable for their failure to remedy the hostile educational environment experienced by Jane Doe by failing to offer her appropriate supportive measures and accommodations that could have provided equal access to educational opportunities and benefits and by ailing to remedy a known sexually hostile environment.

181.   As a direct and proximate result of Defendants' wrongful acts and omissions, Jane Doe has sustained injuries and damages, including, but not limited to, economic loss, loss of earnings and earnings capacity, educational loss, mental and emotional distress, including anxiety, mental anguish, humiliation, embarrassment, damage to her good name, and loss of the ordinary pleasures of everyday life.

## COUNT III
### Denial of Substantive Due Process
### 42 U.S.C. § 1983 and the Fourteenth Amendment
### (Defendants Lonze, Russo, Kalhorn, Smith, O'Brien, and Young, in their individual capacities)

182.   Plaintiff incorporates by reference the allegations contained in the previous paragraphs.

183.   The Fourteenth Amendment to the United States Constitution, enforceable pursuant to 42 U.S.C. § 1983, provides that no state shall "deprive any

person of life, liberty, or property, without due process of law . . ..” U.S. Const. amend. XIV, § 1.

184.   Defendants' failure to comply with the administrative requirements of Title IX and their failure to provide Jane Doe with an opportunity to be heard prior to removing her from school for 45 days as required by *Goss v. Lopez* and the Michigan Department of Education deprived Jane Doe of her substantive due process rights to her liberty interest in bodily integrity and her property interest in her education.

185.   As a direct and proximate result of Defendants' wrongful acts and omissions, Jane Doe has sustained injuries and damages, including, but not limited to, economic loss, loss of earnings and earnings capacity, educational loss, mental and emotional distress, including anxiety, mental anguish, humiliation, embarrassment, damage to her good name, and loss of the ordinary pleasures of everyday life.

## COUNT IV
### Denial of Procedural Due Process
### 42 U.S.C. § 1983 and the Fourteenth Amendment
### (Defendants Lonze, Russo, Kalhorn, Smith, O'Brien, and Young, in their individual capacities)

186.   Plaintiff incorporates by reference the allegations contained in the previous paragraphs.

187.   The Fourteenth Amendment to the United States Constitution, enforceable pursuant to 42 U.S.C. § 1983, provides that no state shall "deprive any person of life, liberty, or property, without due process of law . . .." U.S. Const. amend. XIV, § 1.

188.   Defendants' failure to comply with the administrative requirements of Title IX and their failure to provide Jane Doe with an opportunity to be heard prior to removing her from school for 45 days as required by *Goss v. Lopez* and the Michigan Department of Education deprived Jane Doe of her procedural due process right to be heard prior to deprivation of her liberty and property interests.

189.   Defendants further violated Jane Doe's procedural due process rights as neither Jane Doe nor G.T. were ever provided with notice of the removal from school. Defendants only contacted G.T.'s advocate, who is not an attorney and did not have the authority to accept a disciplinary notice about Jane Doe on behalf of G.T.

190.   Defendants further violated Jane Doe's procedural due process rights by failing to consider the statutorily required seven factors prior to suspending or expelling her from school pursuant to M.C.L. 1310d(1).

191.   As a direct and proximate result of Defendants' wrongful acts and omissions, Jane Doe has sustained injuries and damages, including, but not limited to, economic loss, loss of earnings and earnings capacity, educational loss, mental

and emotional distress, including anxiety, mental anguish, humiliation, embarrassment, damage to her good name, and loss of the ordinary pleasures of everyday life.

**COUNT V**
**Denial of Equal Protection**
**42 U.S.C. § 1983 and the Fourteenth Amendment**
**(Defendants Lonze, Russo, Kalhorn, Smith, O'Brien, and Young,**
**in their individual capacities)**

192.   Plaintiff incorporates by reference the allegations contained in the previous paragraphs.

193.   Plaintiff alleges violations of 42 U.S.C. § 1983 against Defendant due to discrimination on the basis of sex that denied Plaintiffs equal protection under the law in violation of the Equal Protection Clause of the Fourteenth Amendment.

194.   The Fourteenth Amendment to the United States Constitution, enforceable pursuant to 42 U.S.C. § 1983, provides that no state shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1.

195.   Under the Equal Protection Clause of the Fourteenth Amendment, discrimination based on sex is presumptively unconstitutional and subject to intermediate scrutiny.

196.   Defendants' discrimination against Plaintiff on the basis of sex was not substantially or rationally related to any legitimate government interest.

197.   Defendants subjected Plaintiff to violations of her liberty and property interests by failing to timely respond to her reports of sexual harassment and stalking, failing to provide her with information about supportive measures, failing to provide her with information on how to make a formal complaint of sex discrimination, failing to create and publish a Title IX grievance policy, failing to notify her of the identity of its Title IX Coordinator, and failing to adequately train and supervise their staff with respect to the handling of Title IX complaints.

198.   Defendants' discrimination against Plaintiff on the basis of sex endangered her safety, privacy, security, and well-being.

199.   Defendants' actions and inactions deprived Plaintiff of her right to equal dignity, liberty, and autonomy by treating her as a second-class citizen at her school.

200.   This selective treatment was related to WLCSD's interest in covering up sexual misconduct; in other words, this selective treatment was not substantially or rationally related to any legitimate government interest.

201.   It is clearly established that failing to properly investigate allegations of sex discrimination violates the Equal Protection clause.

202.   First, "a State may not, of course, selectively deny its protective services to certain disfavored minorities without violating the Equal Protection

Clause." *DeShaney v. Winnebago Cnty. Dep't. of Soc. Servs.*, 489 U.S. 189, 197 n. 3 (1989).

203.   More recently, the Supreme Court heard a case in which petitioners filed suit against the local school district's governing board and superintendent, alleging that their response to allegations of peer-on-peer sexual harassment of petitioners' daughter was inadequate and constituted unconstitutional sex discrimination in schools in violation of 42 U.S.C. § 1983 for violation of the Equal Protection Clause of the Fourteenth Amendment. *See Fitzgerald v. Barnstable School Comm.*, 555 U.S. 246 (2008).

204.   The Supreme Court held that "Title IX was not meant to be an exclusive mechanism for addressing gender discrimination in schools, or a substitute for § 1983 suits as a means of enforcing constitutional rights," and "§ 1983 suits based on the Equal Protection Clause remain available to plaintiffs alleging unconstitutional gender discrimination in schools," including in the case of school officials' inadequate responses to an allegation of peer-on-peer sexual harassment. *Id*. at 258

205.   As a direct and proximate result of Defendants' wrongful acts and omissions, Jane Doe has sustained injuries and damages, including, but not limited to, economic loss, loss of earnings and earnings capacity, educational loss, mental and emotional distress, including anxiety, mental anguish, humiliation,

embarrassment, damage to her good name, and loss of the ordinary pleasures of everyday life.

## COUNT VI
### Violation of Section 504 of the Rehabilitation Act of 1973
### Disability Discrimination
### 29 U.S.C. § 794, *et seq.*
### (All Defendants)

206.   Plaintiff realleges and incorporates by reference the allegations contained in the previous paragraphs.

207.   WLCSD is a program or activity subject to the requirements of Section 504.

208.   Jane Doe is a qualified individual with a disability within the meaning of Section 504 because she actually and currently has, has a record of, or is regarded as having a physical or mental impairment that substantially limits one or more major life activities.

209.   Defendants knew of Jane Doe's disabilities.

210.   Defendants discriminated against Jane Doe based on her disabilities when they disciplined her for her involuntary trauma response when she was cornered by her stalker and harasser, John Roe.

211.   Other similarly situated individuals were treated more favorably or not subjected to the same treatment.

41

212.   As a direct and proximate result of Defendants' wrongful acts and omissions, Jane Doe has sustained injuries and damages, including, but not limited to, economic loss, loss of earnings and earnings capacity, educational loss, mental and emotional distress, including anxiety, mental anguish, humiliation, embarrassment, damage to her good name, and loss of the ordinary pleasures of everyday life.

<u>**COUNT VII**</u>
**Violation of Title II of the Americans with Disabilities Act**
**Disability Discrimination**
**42 U.S.C. § 12101, *et seq.***
**(All Defendants)**

213.   Plaintiff realleges and incorporates by reference the allegations contained in the previous paragraphs.

214.   WLCSD is a covered entity under Title II of the ADA.

215.   Jane Doe is a qualified individual with a disability within the meaning of the ADA because she actually and currently has, has a record of, or is regarded as having a physical or mental impairment that substantially limits one or more major life activities.

216.   Defendants knew of Jane Doe's disabilities.

217.   Defendants discriminated against Jane Doe based on her disabilities when they disciplined her for her involuntary trauma response when she was cornered by her stalker and harasser, John Roe.

218.   Other similarly situated individuals were treated more favorably or not subjected to the same treatment.

219.   As a direct and proximate result of Defendants' wrongful acts and omissions, Jane Doe has sustained injuries and damages, including, but not limited to, economic loss, loss of earnings and earnings capacity, educational loss, mental and emotional distress, including anxiety, mental anguish, humiliation, embarrassment, damage to her good name, and loss of the ordinary pleasures of everyday life.

**COUNT VIII**
**Violation of the Elliott-Larsen Civil Rights Act**
**Sex Discrimination**
**M.C.L. § 37.2101, *et seq.***
**(All Defendants)**

220.   Plaintiff realleges and incorporates by reference the allegations contained in the previous paragraphs.

221.   WLCSD is an educational institution by and within the meaning of ELCRA, M.C.L. § 37.2401.

222.   ELCRA prohibits discrimination in educational institutions based on sex, specifically providing that no school shall "[d]iscriminate against an individual in the full utilization of or benefit from the institution, or the services, activities, or programs provided by the institution because of . . . sex." MCL § 37.2402(a).

223.   Defendants violated ELCRA by failing to timely respond to Jane Doe's reports of sexual harassment and stalking, failing to provide her with information about supportive measures, failing to provide her with information on how to make a formal complaint of sex discrimination, failing to create and publish a Title IX grievance policy, failing to notify her of the identity of its Title IX Coordinator, and failing to adequately train and supervise their staff with respect to the handling of complaints of sex discrimination.

224.   As a direct and proximate result of Defendants' wrongful acts and omissions, Jane Doe has sustained injuries and damages, including, but not limited to, economic loss, loss of earnings and earnings capacity, educational loss, mental and emotional distress, including anxiety, mental anguish, humiliation, embarrassment, damage to her good name, and loss of the ordinary pleasures of everyday life.

**COUNT IX**
**Violation of the Persons with Disabilities Civil Rights Act**
**Disability Discrimination**
**M.C.L. § 37.1101, *et seq.***
**(All Defendants)**

225.   Plaintiff incorporates by reference the allegations contained in the previous paragraphs.

226.   WLCSD is an educational institution within the meaning of PDCRA.

227.   Jane Doe is a student within the meaning of PDCRA.

228.   PDCRA prohibits an educational institution from discrimination on the basis of disability.

229.   Jane Doe is a person with a disability, and/or was regarded as having a disability by Defendants, and thus is covered by PDCRA.

230.   Defendants knew of Jane Doe's disabilities.

231.   Defendants discriminated against Jane Doe based on her disabilities when they disciplined her for her involuntary trauma response when she was cornered by her stalker and harasser, John Roe.

232.   Other similarly situated individuals were treated more favorably or not subjected to the same treatment.

233.   As a direct and proximate result of Defendants' wrongful acts and omissions, Jane Doe has sustained injuries and damages, including, but not limited to, economic loss, loss of earnings and earnings capacity, educational loss, mental and emotional distress, including anxiety, mental anguish, humiliation, embarrassment, damage to her good name, and loss of the ordinary pleasures of everyday life.

## COUNT X
## Injunctive Relief

234.   Plaintiff incorporates by reference the allegations contained in the previous paragraphs.

235.    Plaintiff is entitled to injunctive relief under Title IX, 20 U.S.C. § 1681 et seq, and its implementing regulations 34 C.F.R. Part 106 and 38 C.F.R. Part 23.

236.    Plaintiff seeks to compel Defendants to publish the name and contact information for the WLCSD Title IX Coordinator, and to post the Title IX Coordinator's name and contact information in a conspicuous location on its website, as required by 34 C.F.R. § 106.8(a) and (b)(2).

237.    Plaintiff seeks to compel Defendants to adopt and publish grievance procedures that provide for the prompt and equitable resolution of student and employee complaints alleging any action that would be prohibited by 34 C.F.R. Part 106 and a grievance process that complies with 34 C.F.R. § 106.45 for formal complaints as defined in 34 C.F.R. § 106.30 and provide to persons entitled to a notification under 34 C.F.R. § 106.8(a) notice of WLCSD's grievance procedures and grievance process, including how to report or file a complaint of sex discrimination, how to report or file a formal complaint of sexual harassment, and how WLCSD will respond, as required by 34 C.F.R. § 106.8(c).

238.    Plaintiff seeks to compel Defendants to create and/or revise the WLCSD Title IX policy and procedure to include a mandatory progressive discipline provision – applicable to all administrators, faculty, staff, and students – for all substantiated or confirmed reports of harassment, discrimination, or bullying.

239.   Plaintiff seeks to compel Defendants to create and/or revise the WLCSD Title IX policy and procedure to include the release to a student-victim's parents a report regarding investigative findings, as well as the disciplinary, preventative, and remedial steps taken after it has substantiated or confirmed reports of harassment, discrimination, or bullying consistent with student privacy rights under 20 U.S.C. § 1232.

240.   Plaintiff seeks to compel Defendants to create and/or revise the WLCSD Title IX policy and procedure to provide notice as to how individuals can file complaints with the WLCSD Title IX Coordinator and the U.S. Department of Education, Office for Civil Rights, as required by 34 C.F.R. § 106.9.

241.   Plaintiff seeks to compel Defendants to create and/or revise the WLCSD Title IX policy and procedure to require notice to the parents or guardians of all students involved in any substantiated or confirmed misconduct.

242.   Plaintiff seeks to compel Defendants to disseminate to all WLCSD administrators, faculty, staff, students, parents, and guardians the revised WLCSD Title IX policy and complaint procedure and to post the policy and procedure in a conspicuous location on its website, as required by 34 C.F.R. § 106.8(b)(1).

## **RELIEF REQUESTED**

For all the foregoing reasons, Plaintiff G.T. demands judgment against Defendants as follows: injunctive relief; compensatory damages in whatever amount Jane Doe is found to be entitled; exemplary damages in whatever amount Jane Doe is found to be entitled; punitive damages in whatever amount Jane Doe is found to be entitled; attorney fees and costs incurred in pursuing this matter; and any other legal or equitable relief as appropriate at the time of final judgment.

## **DEMAND FOR JURY TRIAL**

NOW COMES Plaintiff G.T., parent and legal guardian of JANE DOE, by and through her undersigned counsel, and hereby demands a trial by jury of all the issues in this case.

Dated: October 4, 2022                    Respectfully Submitted,

**s/ Elizabeth K. Abdnour (P78203)**
ELIZABETH ABDNOUR LAW, PLLC
1100 W. Saginaw St., Ste. 4A-2
Lansing, MI 48915
Telephone: (517) 292-0067
Fax: (517) 709-7700
elizabeth@abdnour.com